**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TERRANCE WREN,

      Petitioner,

v.                            CASE NO: 8:12-CV-588-T-30EAJ

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

Petitioner, Terrance Wren, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The Court has considered the petition, Respondents' response (Dkt. #10) and Wren's reply (Dkt. #12). Upon review, the Court determines that the petition must be denied because Wren's claims are without merit.

## BACKGROUND

Wren was charged with burglary of a dwelling and grand theft. Before his jury trial, Wren filed a motion to suppress evidence, statements, and admissions and a suppression hearing was set for October 31, 2008. On that date, defense counsel explained that she was not ready to go forward because Wren was not present. Counsel stated that she had sent Wren notice of the hearing, and told the trial court that she was not willing to waive his presence.

After some discussion, the trial court decided to start the suppression hearing and hear testimony from the witnesses who were present. Following the testimony, the trial court would then decide whether it needed to give Wren a chance to testify as well. Detective Roderick Esteve and Detective Scott Evans, of the Winter Haven Police Department, testified that day.

Detective Esteve testified that he saw Wren at the police department on December 26, 2007, picking up his wallet. Esteve was aware that Wren's DNA had been identified in relation to a 2006 burglary assigned to Detective Evans, so he arrested Wren, placed him in a cell, and waited for Evans. The two detectives conducted an interview after Evans arrived.

Prior to taping the interview Wren asked why he had been arrested and Esteve told him that it was in reference to DNA. On cross-examination, Esteve testified that he and Evans had several conversations with Wren before the taped interview. He did not recall whether he had talked to Wren about extension cords before the taped statement and did not remember telling Wren he just wanted the extension cords back. Esteve testified that he did not tell Wren that Wren would not be arrested if Wren gave the extension cords back and he did not make any promises.

Evans testified that he was assigned the burglary case in September, 2006. He was notified before December 26, 2007, by FDLE that DNA from blood collected at the crime scene matched Wren's DNA. Prior to the taped statement on December 26, 2007, Evans talked to Wren about DNA and about getting the stolen electrical cords back. Wren said

that he knew where the cords were and could get them back for Evans. Evans testified that he never made any promises not to prosecute if Wren gave him the cords.

After the initial conversation, Wren agreed to give a taped statement. During the taped interview Evans read Wren his rights and Wren signed a written waiver.

After the State's witnesses testified at the suppression hearing, the trial court stated that before it would rule on the motion to suppress, it would give Wren a chance to testify during the pre-trial conference. The suppression hearing resumed for Wren's testimony on January 30, 2009.

Wren testified that the detectives started talking to him about the extension cords without advising him of his rights and they did not tell him that he was under arrest before they started questioning him. According to Wren, the detectives said that if Wren gave them the cords, he would not be charged. He agreed to do that and then they read him his rights and took a taped statement.

On cross examination, Wren admitted he was a convicted felon and acknowledged that he was advised of his rights prior to giving the taped statement, that he understood those rights, and that he voluntarily answered the detectives' questions.

On February 3, 2009, the trial court entered a written order suppressing Wren's pre-*Miranda* statements and denying suppression of his post-*Miranda* statements.

In the taped statement Wren was first given *Miranda* warnings and then he agreed with Detective Evans that he could get the extension cords back. He asserted that he got the extension cords from a garage, not a house. Wren denied breaking a window, but claimed that the window was already broken and that he went in to unlock the door and

that is when he cut himself. Near the end of the statement, Wren again stated that he could get the extension cords back to the victim.

At trial, Annette Whitney testified that she owned a house on Lake Howard Drive. She further testified that Mark Brown was renovating the house at the time and she did not give anyone other than Mr. Brown permission to go into the house.

Mr. Brown testified that he was renovating Ms. Whitney's home and on September 14, 2006, he left some lights and electrical cords on the property. Before leaving for the night he placed the cords inside the house and made sure all of the doors and windows were locked. When he returned the next morning, the front door was standing open and a back window had been torn out. Three extension cords were missing.

Detective Evans also testified about the statement Wren made to the police on December 26, 2007, and the recorded statement was played for the jury.

The testimony of the State's witnesses indicated that blood was found on the wall of the house underneath the torn out back window. The blood was collected and tested and the DNA profile matched Wren's DNA.

After the State rested its case, defense counsel moved for a judgment of acquittal on both charges, but the motion was denied. The defense then recalled Ms. Whitney and Detective Evans to establish that Ms. Whitney had suspected someone other than Wren of committing the burglary.

Wren then testified in his own defense. He testified that he spoke to the detectives for approximately fifteen minutes before the conversation was recorded. During that time he promised to give the detectives the three extension cords in exchange for not being

prosecuted. Wren claimed that he did not know what extension cords Detective Evans was talking about and he was going to buy three extension cords to give the detectives. He denied stealing any extension cords from Ms. Whitney's house, denied breaking the window or opening the doors, and denied going into the garage or a carport. He did admit that he had previously been convicted of a felony six times. On cross-examination, Wren testified that he never went into Ms. Whitney's house, never broke the window, never cut himself, and never bled on the wall.

On March 25, 2009, the jury found Wren guilty of both charges. At the sentencing hearing on May 22, 2009, Wren was sentenced to concurrent sentences of ten years incarceration on the burglary charge and five years incarceration on the grand theft charge.

After being found guilty, Wren pursued a direct appeal and his counsel filed an initial brief raising the following claims:

**Claim One:**   The trial court erred in denying Appellant's motion of acquittal for burglary.

**Claim Two:**   The trial court erred in holding a pretrial hearing on the admissibility of Appellant's statement to police in his absence.

**Claim Three:**   The trial court erred in denying Appellant's motion for judgment of acquittal where the evidence was insufficient to prove grand theft.

**Claim Four:**   The trial court erred in denying Appellant's motion for judgment of acquittal where the state failed to show appellant took Mark Brown's cords.

| | |
|---|---|
| **Claim Five:** | The trial court erred in denying Appellant's motion to exclude statements made to police. |
| **Claim Six:** | The trial court erred in overruling Appellant's objection to Cara Raymond testifying to DNA statistics where the State failed to lay an adequate foundation that Raymond had sufficient knowledge of the database used. |

The appellate court affirmed Wren's convictions and sentences without opinion on June 2, 2010. The mandate issued on June 25, 2010.

On August 18, 2010, Wren filed a motion for postconviction relief raising four claims:

| | |
|---|---|
| **Claim One:** | The trial court erred in denying Appellant's motion of acquittal for burglary. |
| **Claim Two:** | The trial court erred in holding a pretrial hearing on the admissibility of Appellant's statement to police in his absence |
| **Claim Three:** | The trial court erred in denying Appellant's motion to exclude statements made to police. |
| **Claim Four:** | The State failed to disclose evidence favorable to Appellant. |

On September 21, 2010, the circuit court entered an order denying petitioner's motion for postconviction relief. Wren's motion for rehearing was filed on October 5, 2010 and denied on November 21, 2010.

Wren appealed and filed an initial brief raising the same claims that he raised in the circuit court. The State elected not to file an answer brief. On February 8, 2012, the

appellate court affirmed the denial of Wren's motion. The mandate issued March 21, 2012. The present federal petition was delivered to prison officials for mailing on March 15, 2012.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective as of April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

Where a state court initially considers the issues raised in the petition and enters a decision on the merits, Section 2254(d) governs the review of those claims. *Price v. Vincent*, 538 U.S. 634, 638 (2003). A federal court may grant a § 2254 petition only if (1) the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See Price v. Vincent*, 538 U.S. at 638-39; *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

In *Putnam v. Head*, 268 F.3d 1223 (11th Cir. 2001), the Eleventh Circuit discussed the meaning of the "contrary to" and "unreasonable application" clauses of § 2254(d)(1):

A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.

*Putnam*, 268 F.3d at 1241.

Section 2254 establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). If a federal court concludes that a state court applied federal law incorrectly, it may grant habeas relief only if that application was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Moreover, a state court's factual findings shall be presumed correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### Timeliness:

Wren's petition is timely pursuant to the one-year limitation period of 28 U.S.C. § 2244(d)(1), as amended by AEDPA. According to AEDPA, a person in custody pursuant to the judgment of a state court has one year from the date his judgment became final to file a § 2254 federal habeas petition. However, the limitation period does not include "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Wren's convictions were affirmed by the state appellate court on June 2, 2010. He then had 90 days to seek review in the United States Supreme Court. Wren's 90 days would have ended on August 24, 2010.

On August 18, 2010, Wren filed a motion for postconviction relief, thereby tolling the year within which to file his federal habeas petition. Wren's motion was denied by the state circuit court on September 21, 2010, and the state appellate court affirmed the denial on February 8, 2012. The mandate issued March 21, 2012. Wren then had one year within which to file his federal habeas petition. *San Martin v. McNeil*, 633 F.3d 1257 (11th Cir. 2011). Wren's petition was delivered to prison officials for mailing on March 15, 2012. Accordingly, the petition is timely.

**Ground One:**      The trial court erred in holding a hearing on the admissibility of Wren's statement to the police in Wren's absence.

In support of ground one, Wren argues that, over his counsel's objection, the trial court waived Wren's presence at a suppression hearing. Wren claims that his absence from the hearing violated Article 1, Section 16 of the Florida Constitution, which guarantees him the right to be present at all critical stages of his criminal proceedings.

Wren's argument in ground one is based on the Florida Constitution, which is not an appropriate subject for federal habeas review. Federal habeas relief is available to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 was not enacted to enforce state created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000).

Even if Wren were alleging that his federal constitutional rights were violated by his absence from the suppression hearing, the argument would fail. A defendant has a right to be present at any critical stage of the criminal proceeding, "if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The Supreme Court has never held that a pretrial suppression hearing is a critical stage. In fact, the Supreme Court has stated that "the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." *United States v. Raddatz*, 447 U.S. 667, 679 (1980).

The trial court decided to proceed with a portion of the suppression hearing while Wren was absent, but it did not rule on the motion to suppress until after Wren was present and had testified. Additionally, Wren has not explained how his presence during the testimony of the officers would have contributed to the hearing, or how his absence was prejudicial.

In light of the facts of this case and the Supreme Court's rulings on other cases, the state court decision to deny relief on this issue was neither an unreasonable application of any clearly established federal law nor contrary to federal law. Accordingly, this ground fails.

**Ground Two:**        The trial court erred in denying Wren's motion for acquittal.

In support of ground two, Wren argues that the court erred when it denied Wren's motion for acquittal based on the state's failure to "prove the element of burglary." Petition (Dkt #1), p. 6. Wren's claim in ground two appears to be that the evidence at trial was insufficient to convict him.

To prevail on a claim of insufficient evidence, the petitioner must establish that "after viewing the evidence in the light most favorable to the prosecution," no rational trier of fact could have found proof beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, Wren has failed to meet this burden.

The evidence at trial showed that on the evening of September 14, 2006, Mark Brown, the last person to leave the victim's house, made sure that all the windows and doors on the victim's home were secure. When Mr. Brown returned the next morning, the house had been burglarized and electrical cords had been stolen from inside the home. A window had been ripped out and Wren's blood was found on the outside wall directly below the window. When questioned by the police, Wren said that he would return the missing extension cords. The totality of this evidence was sufficient to support a finding that Wren entered the victim's house and stole the extension cords. Accordingly, this ground fails.

**Ground Three:**     The trial court erred in denying Wren's motion to suppress.

In support of ground three, Wren argues that his statement to the police should have been suppressed because it was involuntary and obtained in violation of his *Miranda* rights. Wren claims the statement was involuntary because it was made in response to an implied promise.

A two-step process of interrogation involving questioning on the same topics both before and after *Miranda* warnings is generally not allowed. *Missouri v. Seibert*, 542 U.S. 600 (2004). However, *Siebert* only applies when the two-step interrogation was a

deliberate, coordinated approach calculated to undermine *Miranda*. *State v. Pitts*, 936 So. 2d 1111, 1136 (Fla. 2d DCA 2006).

There is no evidence in the record that the police officers who interrogated Wren deliberately engaged in a two-step interrogation in order to undermine *Miranda*. Therefore it was objectively reasonable for the trial court to conclude that these officers did not intentionally withhold *Miranda* warnings during the initial conversation with Wren. Wren has not shown that the state court decision was contrary to or an unreasonable application of *Siebert* or any clearly established federal law.

Wren's claim that his statement was involuntary is also without merit. During the suppression hearing the police officers both testified that they did not promise to let Wren go if he returned the extension cords. The trial court found the officers' testimony more credible and made a factual determination that the officers did not promise to release Wren if he returned the extension cords. Order Denying Motion to Suppress (Dkt. #11, Ex. 6), ¶7. The trial court's factual findings are presumed correct, and Wren has the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Wren has failed to present any evidence, let alone clear and convincing evidence, to rebut the presumption that the trial court's factual finding was correct. Accordingly, all of ground three fails.

**<u>Ground Four:</u>**  The prosecution failed to disclose evidence favorable to Wren's defense.

In support of ground four, Wren argues:

[The] State objected to defense counsel emitting (sic) the knowledge of a second suspect to [the] jury. No effort was made to ensure that they had the

right man, despite the victims giving them a description of a suspect. Due Process requires [the] government to turn over evidence in its possession favorable to [the] accused and material to guilt or punishment.

Petition (Dkt. #1), pp. 9-10.

Wren's claim in ground four is without merit. It is generally a Due Process violation for the prosecution to withhold evidence favorable to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In this case, however, Wren's defense counsel was aware of the second suspect and even questioned two witnesses about this suspect during trial. Trial Court Transcript (Dkt. #11, Ex. 8), pp. 247-253.

Defense counsel's questioning of Ms. Whitney and Detective Evans about the second suspect shows that counsel was aware of the information that Wren claims the state withheld. Accordingly, this ground fails.

## <u>CONCLUSION</u>

It is therefore ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.


CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED.

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district

court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

F:\Docs\2012\12-cv-588.deny 2254.docx